## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

KENNETH L. BOYLE, on behalf of
himself and all others similarly situated,

          Plaintiffs,

v.

FORD MOTOR COMPANY, a Delaware
corporation.

          Defendant.

Civil Action No.:

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, Kenneth L. Boyle ("Plaintiff"), by and through his undersigned counsel, brings this class action complaint on behalf of himself and all others similarly situated persons in the United States who purchased or leased a vehicle designed, manufactured, and distributed by Defendant, Ford Motor Company ("Defendant" or "Ford"). The allegations in this complaint are based on personal knowledge of the Plaintiffs' own experiences and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

### I.   INTRODUCTION

1.   This is a consumer class action concerning the Defendant's failure to disclose material facts and significant safety issue.  Ford designs and manufacturers incomplete, cutaway trucks, known as the Ford E-Series Cutaway ("Ford Cutaways" or "Cutaway"). The Ford Cutaway's are advertised to be used for a "wide range of

commercial and recreational applications," including recreational vehicles ("RV"), box trucks, and ambulances.

2.      To accommodate their intended application, the Cutaway's gross vehicle weight rating is critical.  Per federal regulations, every vehicle manufacturer must include the vehicle's "gross vehicle weight rating" ("GVWR") which is the "value specified by the manufacturer as the loaded weight of the single vehicle," which includes cargo, fluids, passengers, and optional equipment. 49 CFR § 571.3(b).  The GVWR is the heaviest weight the vehicle can safely carry.

3.      As part of its Cutaway marketing, Ford specifically advertises the GVWR for each vehicle model: (i) E-350 Single-Rear-Wheel Cutaway, GVWR of 10,050 lbs; (ii.) E-350 Dual-Rear-Wheel Cutaway GVWR from 11,500 lbs to 12,500 lbs; and (iii.) E-450 Dual Rear-Wheel Cutaway, GVWR of 14,500 lbs.  Ford tells consumers that these GVWR ratings demonstrate that "the E-Series has shown that it won't quit when the going gets tough."[1]

4.      However, the Cutaway cannot accommodate the stated GVWR because Ford designed and manufactured the Cutaways with a suspension system that cannot be adjusted. Essentially, the vehicle cannot be aligned after it has been built out into its final use (e.g., recreational vehicle, box truck, ambulance, etc.)  a step that is

---

[1] https://www.ford.com/commercial-trucks/e-series-cutaway/features/capability/
(last visited July 7, 2022) (attached as Exhibit 1).

critical to the construction and safe use of the completed vehicle.

5.     As a result, after a consumer, like Plaintiff, purchases a Ford Cutaway that has been built out, the vehicle will not track the road and safe steering is extremely difficult as the vehicle will pull to one side of the road due to its weight. The driver, while operating at highway speed, must constantly compensate for the vehicle's inability to be driven straight.

6.     To remediate this situation, and make the Cutaway not only tolerate its stated GVWR but also safe to drive, the consumer must purchase and have installed—as Plaintiff did here—various aftermarket parts to fix the Cutaway's suspension. Specific to Plaintiff here, he paid $855 to add parts to his RV to remediate the suspension problems.

7.     Ford, for its part, acknowledges that suspension for the Cutaways could become problematic, so it offers a limited warranty that states that: "[w]heel alignments and tire balancing will be provided during the first 12 months or 12,000 miles in service, whichever occurs first." Yet, despite this promise, Ford rejects, as it did with Plaintiff, any such warranty claims under the guise that the Cutaway was modified because of its final build out, and therefore, the warranty is void.  Ford knows the entire point of the Cutaway is to use it to build out a final vehicle (e.g., recreational vehicle, box truck, ambulance).  Ford's limited warranty is entirely illusory and deceptive.

8.     This is not the first instance where Ford misstated its vehicles load capacities.  In May 2022, Ford agreed to settle false advertising claims brought by 39 states and the District of Columbia which claimed that Ford misrepresented the payload capacity for its 2011-2014 Super Duty pickup trucks. The Attorney Generals claimed that Ford made it seem as if the trucks could haul more weight than they could by subtracting the weight of items that would typically be present in or on the vehicle, including a spare tire and jack as well as the car's radio.

9.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and the class defined below. Plaintiff asserts claims pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C.§§ 2301, et seq. ("MMWA"), common law breach of express and implied warranties, and violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat.§§ 501.201, et seq. ("FDUPTA").  Plaintiff seeks both damages and declaratory relief.

## II.   JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

11.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a

substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in this judicial district because Defendant resides in this District.

## III.   PARTIES

### A.   Plaintiff

12.   Plaintiff, Kenneth L. Boyle, is an adult citizen who is a resident of the State of Florida. On October 20, 2020, Plaintiff purchased from General RV in Dover, Florida, a 2021 Ford E-series (E-450) Cutaway that was fitted as a recreational vehicle by Thor RV, VIN No. 1FDXE4FN9MDC24730.

13.   Plaintiff almost immediately noticed that the vehicle pulled left when driving regardless of the vehicle's load (loaded or unloaded). On February 22, 2021, with the vehicle having just 4,674 miles, Plaintiff was told by General RV that it did not address alignment issues and referred Plaintiff to Bill Currie Ford Fleet Services in Tampa, Florida to have the vehicle aligned. Bill Currie Ford via its Quick Lane Tire & Auto Center ("Currie Ford") performed the first alignment for which, should have been covered by warranty, but yet Plaintiff paid $169.

14.   After the alignment, the vehicle continued to pull left when driving.  On March 19, 2021, now with 5,357 miles, Plaintiff returned to Currie Ford for another alignment, which was performed at no cost.

15.   After the second alignment, the vehicle continued to pull left. Plaintiff returned to General RV questioning why the vehicle's pulling was so bad.  He

explained that because of the pulling the cruise control and traction assist stopped working. General RV recommended he purchase and have installed an aftermarket part known as the "Safe T plus" to stop the vehicle from pulling.

16.     After conducting research on the internet about the "Safe T plus," on March 25, 2021, Plaintiff emailed the "Safe T plus" manufacturer explaining that even though the vehicle is within tolerance for alignment, it still pulls left. The manufacturer responded that it has "installed [the Safe T plus] on so many E450's" and advised Plaintiff that the cost of part would be $634 without installation.

17.     On April 6, 2021, Plaintiff emailed Thor RV customer service and reported that he had the RV aligned twice and that it continues to "pull hard to the left." On April 14, 2021, Thor's warranty department wrote to Plaintiff, "[a]s for the pulling concern, if the alignment did not cure the pull, then possibly it is something else and would need Ford to be involved. Please call Ford at 800-444-3311 advise the issue and at this time request a case number. They will give you a case number, so you can follow up while getting this looked at, at Ford. Ford holds the Warranty on the chassis, so we need them to look at the chassis part please. It could be more than just an alignment as you stated the vehicle continues to pull after  you had it aligned."

18.     On September 17, 2021, Plaintiff dropped the vehicle off at Gator Ford in Seffner, Florida, due to the continued pulling.  Plaintiff was told that the vehicle

required aftermarket parts to stop the alignment issue, which were not covered by warranty. The cost for the parts and installation would be $855.43.

19.    On September 23, 2021, Thor RV contacted Ford Customer Care on behalf of Plaintiff about the pulling defect. In response, a Ford Customer Care representative named, "Carl," contacted Plaintiff and provided him Ford case identification number: CAS-33477045-T8G3N5.

20.    On September 28, 2021, Thor RV formally denied Plaintiff's claim, writing "THOR won't be able to help with goodwill. [The pulling issue] was not documented in our records prior to now. If there is a Ford issue then Ford should be the one to cover this, *as per Ford the alignment is toe adjustable only from them. Any camber and caster adjustment can only be made via installing parts that are not from the factory*."

21.    On September 29, 2021, Plaintiff authorized Gator Ford to install the aftermarket parts, which remedied the pulling defect. Plaintiff paid $855.43 plus tax.

**B.    Defendant**

22.    Defendant, Ford Motor Company, is a corporation organized and incorporated in the State of Delaware with its principal place of business and headquarters located at 1 American Road, Dearborn, Michigan 48126. Ford, designs, manufacturers, markets, distributes, warranties, and sells Ford automobiles and parts

7

for those automobiles.

23.    To sell vehicles to the public, Defendant enters into agreements with authorized dealerships that are permitted to service and repair Ford vehicles under the warranties Ford provides directly to consumers who purchased or lease Ford vehicles. All service and repair at an authorized dealership are completed according to Ford's instructions, issued through service manuals, technical service bulletins ("TSBs"), technical tips ("TT"), and other documents. Per the agreements between Defendant and the authorized dealers, consumers such as Plaintiff can receive services under Ford's issued warranty at dealer locations that are convenient to them. These agreements provide Defendant with a significant amount of control over the actions of the authorized dealerships.

## IV.    FACTUAL BACKGROUND

### A.    Ford's Cutaway Vehicles

24.    Defendant Ford designed and manufactured the E-Series Cutaway chassis with an engine and drivetrain. These Ford Cutaways are to be sold to third parties who use the base to build out recreational vehicles, box trucks, dump trucks, ambulances, passenger vans or utility vans, among other uses. Federal regulations refer to these vehicles as an "incomplete vehicle." 49 CFR § 568.4.



**Ford E-350 Cutaway**

25.     Federal regulations require every vehicle manufacturer to identify the "gross vehicle weight rating" ("GVWR") which is the "value specified by the manufacturer as the loaded weight of a single vehicle."  49 CFR § 571.3(b). The Gross Vehicle Weight is the actual weight of the fully loaded vehicle including all cargo, fluids, passengers, and optional equipment. The GVWR is the heaviest weight the vehicle chassis can safely carry.

26.     In the case of an incomplete vehicle, like the Ford Cutaways, federal regulations require the manufacturer to include gross vehicle weight rating of the completed vehicle for which the incomplete vehicle is intended. 49 CFR § 568.4(4).

27.     On its website, and as part of its marketing, Ford affirmatively represents the GVWR of the Cutaways.[2]

---

[2] https://www.ford.com/commercial-trucks/e-series-cutaway/ (last visited July 7, 2022) (attached as Exhibit 2).

### E-350 SINGLE-REAR-WHEEL CUTAWAY

The E-350 Cutaway with single rear wheels delivers all the power and capability needed for a wide range of commercial and recreational applications. It's powered by a standard 7.3L V8 Premium-rated engine or available 7.3L V8 Economy-rated engine calibration. It has an available GVWR of 10,050 lbs. *

### E-350 DUAL-REAR-WHEEL CUTAWAY

The E-350 with dual rear wheels offers midrange capacities in available GVWRs from 11,500 lbs. to 12,500 lbs.,* with an available max payload rating of 7,210 lbs. ** (minus body weight). The E-350 DRW is powered by a standard 7.3L V8 Premium-rated engine or available 7.3L V8 Economy-rated engine calibration.

### E-450 DUAL-REAR-WHEEL CUTAWAY

The E-450 with dual rear wheels delivers high-end capability with an available GVWR of 14,500 lbs. * and an available payload rating of 8,980 lbs. (minus body weight). ** If you're into towing heavy loads, the E-450 DRW has a maximum GCWR of 22,000 lbs. Power is supplied by a standard 7.3L V8 Premium-rated engine or available 7.3L V8 Economy-rated engine.

28.    As required by law, Ford also includes a placard in the door of the Cutaways listing the GVWR. For the E-450 series vehicle, the GVWR is 14,500 lbs.



29.    In other words, Plaintiff's Ford E-450 is affirmatively represented to be capable of safe operation with a GVWR of up to 14,500 lbs.

30.    With respect to the suspension and handling, the Ford Cutaway is specifically advertised to feature a "Twin-I-Beam independent front suspension (**with caster / camber adjustment**), front stabilizer bar and gas pressurized shock

absorbers contribute to a smooth, comfortable ride."[3] Ford's advertisement states that a "caster / camber adjustment" is necessary for the independent front suspension.



---

[3]Ford's advertisement for the 2021 E-Series Class C Motorhome Chassis available at:https://www.fleet.ford.com/content/dam/aem_fleet/en_us/fleet/towing-guides/2020_Ford_RVandTrailerTowingGuide.pdf (last visited May 2, 2022) (emphasis added) (attached as Exhibit 3).

31.     The problem, however, is that the Ford Cutaways do ***not*** allow for any caster or camber adjustment and therefore the suspension cannot accommodate the stated GVWR causing the vehicle to pull and not safely track the road. The adjustment to castor and camber, as stated by Ford, can only be made by purchasing aftermarket parts outside of warranty coverage.

**B.     Castor and Camber**

32.     Camber is the inward or outward tilt of the front tires as viewed from the front. Inward tilt is negative, outward tilt is positive. Camber is used to distribute load across the entire tread. Improper camber makes the tire wear on one edge and causes the vehicle to pull to the side that has the most positive camber.



33.     Caster is the fore or aft slope of the steering axis. The steering axis is a line drawn through the upper and lower ball joints of the knuckle. Positive caster is when the bottom of the steering axis line is in front of the tire's contact patch. Zero caster is when the steering axis is at 0 degrees. Factory alignment specs for basically all vehicles call for a certain degree of positive caster. This ensures good stability,

helps maintain straight-ahead direction and promotes steering wheel self-centering. If too little caster exists, the vehicle will wander and weave on the road, requiring constant correction in steering.



34. The ability to adjust castor and camber is crucial to alignment of the vehicle, which impacts how the vehicle tracks down the road and the amount of weight the vehicle can safely carry. The more weight that is applied to the steering axle the further down out the top of the wheels point inward (i.e., negative camber).

35. As the Ford Cutaway is loaded with more weight during the build-out process the suspension springs will, naturally, begin to carry the load. The result is negative camber. The diagram below shows the I-beam suspension without load.



36.     The next diagram shows weight applied to the I-beam suspension and the resulting negative camber of 2 degrees.



37.     Ford knows that the Cutaways it designs, manufacturers, and sells, are an incomplete vehicle going to be used to build out a completed vehicle (e.g.,

recreational vehicle, ambulance, box truck), and that these vehicles expressly state they have a GVWR of 14,500 lbs, Ford designed the Cutaways with standard alignment without the ability adjust the castor or camber to correct for the added load of the completed vehicle.

38.     Indeed, all the Cutaways have identical fixed, nonadjustable caster / camber sleeves, a one size fits all approach regardless of the ultimate use of the Cutaway. The sleeves are keyed and cannot be rotated for purposes of adjustment. The non-adjustable caster / camber sleeve on a Ford Cutaway is pictured below.



39.     As a result of the inability to adjust castor / camber, the Cutaway when in finished form, becomes nothing short of a chore to drive with constant "pulling" or "wandering" on the roadway, difficulty steering, significant premature tire wear and/or uneven tire wear.

40.    To remediate the problem, the owner of the vehicle must purchase aftermarket parts, including adjustable bushings to adjust castor / camber and/or sway bars, just as Plaintiff purchased for $855.

**C.    Ford's Knowledge**

41.    Plaintiff is not alone. Owners of Ford Cutaways have recognized the need to buy aftermarket parts to make the vehicle safely operate within its GVWR. As one owner's complaint to the National Highway Traffic Safety Administration ("NHTSA"):

> I PURCHASED THIS THOR MOTOR HOME FROM A DEALER ON 09/06/2019, USED OUR FIRST TRIP 260 MILES BOTH WAYS I HAVE FOUND A VERY DIFFICULT TIME ON KEEPING UNIT ON ROAD PROPERLY CONSTANTLY DRIFTING AND VERY FATIGUED IN DRIVING. AT CAMP SIGHT AN IDENTICAL 31W THOR 2018 OWNER STATED HE HAD SAME PROBLEM AN NEIGHBORS STATED THAT STABILIZER NEEDS TO BE REPLACED WITH A SAFETPLUS 31-140 UNIT AND NOW NO PROBLEM. HELP!!! I WOULD CONSIDER THIS TO BE A SAFETY ITEM THAT NEEDS CORRECTION. HIGHWAY 65MPH.[4]

42.    In RV forums, Ford Cutaway owners advise each other of the problems associated with the inability to adjust caster / camber.

> The only way to adjust caster and camber is with new bushings so I went and bought myself some 4 degree

---

[4] https://www.nhtsa.gov/vehicle/2016/FORD/E-450#complaints (last visited July 7, 2022) (attached as Exhibit 4).

adjustable caster camber bushings and got to work. I adjusted the bushings to add 3 degrees of positive caster from stock settings and set it neutral on camber which in effect was -0.25 from stock since the stock alignment had a +0.25 bushing for camber[5]

43.    Another Ford Cutaway owner is quoted below:

The E450 cutaway uses non adjustable shims that set the caster on my 29mv in the 2 to 2.5 degree range. Moog manufactures adjustable ones that allow plus 5 degrees. Incidentally the shims determine camber also. Night and day difference in handling with only caster set to plus 5 degrees.[6]

44.    A post from as early as February 2011 on RV Forum:

Yes, I also have the same suspension, and so does every E350/E450. The top mount of your upper ball joints are shipped from the factory with fixed non adjustable sleeves that need to be replaced.
In my opinion, your best choice in adjustable sleeves are from Ingalls Engineering. They are clearly marked as INGALLS 594. They consist of two concentric sleeves that have 360/24 = 15 degrees indices labeled A through X. In order to set them you need a "cheat" sheet which is on the web as "59400.pdf". These sleeves will allow adjustment of both CAMBER and CASTER up to +/- 2.0 degrees each, in any combination of CASTER or CAMBER. All you need to do is, using the cheat sheet, is take the max adjustable + CASTER change which is +2.0 any you will see a black and white improvement.[7]

---

[5] https://www.rv.net/forum/index.cfm/fuseaction/thread/tid/28216148/print/true.cfm (last visited July 7, 2022) (attached as Exhibit 5).

[6] https://www.jaycoowners.com/forums/f5/having-alignment-done-tomorrow-70012-2.html (last visited July 7, 2022) (attached as Exhibit 6).

[7] https://www.rvforum.net/threads/e350-e450-handling-problems-are-caused-by-too-little-caster.40337/ (last visited July 7, 2022) (attached as Exhibit 7).

### D.   Ford's Limited Warranty Is Illusory

45.    Ford provides a manufacturer's warranty for all new Ford Cutaways it manufactures and sells. The Ford Warranty provides bumper to bumper coverage for 3 years / 36,000 miles with a powertrain warranty spanning 5 years / 60,000 miles. The Ford Warranty states that it will "replace or adjust certain maintenance items, when necessary, free of charge during a limited period."  Specifically, the Ford Warranty states: "[w]heel alignments and tire balancing will be provided during the first 12 months or 12,000 miles in service, whichever occurs first."[8]

46.    Despite this unequivocal warranty language, Ford denies warranty claims by relying on an exclusion that excepts warranty coverage for the Cutaways that have been altered or modified after the vehicle leaves the control of Ford.

47.    That exclusion belies the entire purpose of the E-Series Cutaway.  The Cutaways are intended to be altered or modified after they leave Ford's control.  In fact, Ford specifically markets the E-Series Cutaway based on its ability to be altered

---

[8] Thor RV provides a Limited Structural and Lamination Warranty. The Thor RV warranty, however, specifically excludes coverage for defects associated with the "leveling jacks, the automotive chassis and power train, including by way of example the engine, drive-train, steering, ride and handling, braking, wheel balance, muffler, tire wear of failure, tubes, batteries and gauges." Thus, Thor is relying on Ford to warranty the vehicle itself, including the powertrain and steering mechanisms.

or modified into various recreational or utility vehicles.[9]



### V.   CLASS ACTION ALLEGATIONS

48.   Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff intends to seek

certification of the following Class:

> All persons who purchased or leased in the State of Florida
> a new completed vehicle utilizing a Ford E-Series
> Cutaway between 2018 and the date of class certification
> that required adjustment and/or modification to correct
> alignment within the first 12,000 miles after purchase.

49.   Excluded from the class are: Ford, any affiliate, parent, or subsidiary of

Ford, any entity in which Ford has a controlling interest, any officer, director, or

---

[9] https://www.ford.com/commercial-trucks/e-series-cutaway/features/capability/
(Exhibit 1).

employee of Ford; any successor or assign of Ford; anyone employed by counsel for Plaintiff in this action; any judge to whom this case is assigned; his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such people.

50.     **NUMEROSITY**:  The members of the classes are so numerous that joinder of all members is impracticable.   While the precise number of Class Members can only be confirmed through discovery, it is estimated that there are at least hundreds, if not thousands, of persons who purchased Class Vehicles.

51.     **COMMON QUESTIONS PREDOMINATE:**  There are questions of law and fact common to all members of the Class.  Specifically, Plaintiff's, and the putative class's, claims arise from the same event or practice or course of conduct by Ford that gives rise to those claims of the putative class, and Plaintiff's claims are based upon the same legal theories as those of the putative class.  Ford has engaged in a pattern and practice, in violation of the law, of not advising end users that the E-Series vehicles that they would need to be adjusted, including the use of aftermarket products not covered by warranty, to accommodate the GVWR.

52.     The questions of law and fact common to the Class predominate over questions that may affect individual members, including the following:

> a. Whether Ford knew its E-Series Cutaways could not accommodate the GVWR without modification, including the need for aftermarket parts outside of warranty.

20

b.  Whether Ford breached its warranty by not providing wheel alignments during the first 12 months or 12,000 miles.

c.  Whether Ford's Limited Warranty is deceptive and illusory in that it disclaims coverage for any E-Series Cutaway that has been modified.

d.  Whether Ford breached its express Limited Warranty by failing to provide warranty coverage for alignment during the warranty period.

e.  Whether Plaintiff, and the putative Class, are entitled to be reimbursed for alterations and/or modifications to satisfy the stated GVWR for the Ford E-Series.

53.  **TYPICALITY**:  The claims and defenses of the Plaintiff are representative of the Class he seeks to represent and typical of the claims and defenses of the class because the Plaintiff and the Class all purchased E-Series Cutaway vehicles that were unable to tolerate the GVWR which resulted in the vehicle pulling and wandering on the road while in operation requiring alterations and/or modifications, including the addition of aftermarket parts.

54.  **ADEQUACY**:  Plaintiff will fairly and adequately assert and protect the interest of the proposed class because Plaintiff has hired attorneys who are experienced in prosecuting class action claims and the Plaintiff has no conflict of interest that will interfere with the maintenance of a class action.

55.  **SUPERIORITY**:  A class action provides a fair and efficient method for adjudicating the instant controversy.  Common questions of law and fact predominate over any questions affecting only individual class members and

prosecution of separate action by individual members of the class would risk inconsistent and varying adjudications against Ford.

56.    The claims of individual class members are small in relation to the expense of litigation, making a class action the only procedure in which class members can, as a practical matter, recover damages done to them by Ford.  A class action is superior to, and more efficient than, adjudicating hundreds, if not thousands, of individual lawsuits.

## VI.    CLAIMS FOR RELIEF

### COUNT ONE
### Violation of the Magnuson-Moss Warranty Act
### 15 U.S.C. §§ 2301, (et seq.)

57.    Plaintiff, individually and on behalf of the putative class, hereby incorporates each and every allegation as though fully set forth below.

58.    The MMWA provides a private right of action by purchasers of consumer products to protect consumers against deceptive warranty practices. 15 U.S.C. § 2310(d)(1).

59.    The Class Vehicles are consumer products, as that term is defined in 15 U.S.C. § 2301(1).

60.    Plaintiffs and the members of the class are consumers, as that term is defined in 15 U.S.C. § 2301(3).

61.    Ford is a supplier and warrantor, as those terms are defined in 15 U.S.C.

§ 2301(4)-(5).

62.     The MMWA provides a cause of action for breach of warranty or other violations of the Act. 15 U.S.C. § 2310(d)(1).  Ford breached its express limited warranty by failing to remediate the alignment, suspension and/or steering defects with the Cutaways. 15 U.S.C. § 2308(a)(1). Plaintiff, and the putative class, have suffered damages as a result of Ford's breach of its express warranty. 15 U.S.C. § 2310(d)(1)-(2).

63.     Ford was provided notice of the claims raised by Plaintiff and was afforded a reasonable opportunity to cure.  Ford failed to cure and instead rejected Plaintiff's warranty claim under the guise that the incomplete vehicle had been altered or modified after leaving Ford's control.

64.     Ford's warranty conduct constitutes "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and they are unlawful. 15 U.S.C. § 2310(b); 15 U.S.C. § 45(a)(1).

65.     Plaintiff and the class members have suffered, and are entitled to recover, damages because of Ford's breach of its express warranty.

66.     Plaintiff also seeks an award of costs and expenses, including attorneys' fees, under the MMWA to prevailing consumers in connection with the commencement and prosecution of this action. 15 U.S.C. § 2310(d)(2). Plaintiff and the prospective class intend to seek such an award, including expert witness costs

and other recoverable costs, as prevailing consumers at the conclusion of this lawsuit.

## COUNT II
## <u>Breach of Express Warranty</u>

67.    Plaintiff individually and on behalf of the putative class, hereby incorporates every allegation above as though fully set forth below.

68.    Ford provided an express warranty for the Cutaway that provides bumper to bumper coverage for 3 years / 36,000 miles with a powertrain warranty spanning 5 years / 60,000 miles. The Ford Warranty states that it will "replace or adjust certain maintenance items, when necessary, free of charge during a limited period."   Specifically, the Ford Warranty states: "[w]heel alignments and tire balancing will be provided during the first 12 months or 12,000 miles in service, whichever occurs first."

69.     Ford, however, denies warranty coverage related to wheel alignment and suspension based on the warranty's exclusion that an alternations or modifications to the Cutaway void the express warranty.

70.    Ford's exclusion makes the warranty with respect to alignment and suspension entirely illusory; the exclusion frustrates the purpose of the warranty entirely and it is otherwise deceptive to offer consumers a warranty it knowingly intends not to honor.

71.    Ford breached its warranty by failing to remediate alignment and/or

suspension issues with the Cutaways during the applicable warranty period.

72.    As a direct and proximate result of Ford's breach, Plaintiff and the putative class have suffered damages in, at the very least, the amounts paid to perform wheel alignment, time lost without their vehicle, and the purchase and installation of aftermarket parts.

**COUNT III**
**Breach of Implied Warranty of Merchantability**

73.    Plaintiff, individually and on behalf of the putative class, hereby incorporates every allegation above as though fully set forth below.

74.    Ford impliedly warranted that the Cutaways, which it designed, manufactured, and/or sold, were merchantable, fit and safe for their intended use, including the specific capability of safe operation under significant load.

75.    The Cutaways, however, do not operate safely under their advertised GVWR, and therefore, are unsafe, unfit for their intended use, which threatens the health and safety of the vehicle operator and its occupants.  The Cutaways are therefore not merchantable.  Ford breached the implied warranty of merchantability in the sale or lease of the Cutaway vehicles as they were not fit for their ordinary, intended purposes, and therefore, not merchantable.

76.    As a direct and proximate result of Ford's breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiff suffered damages including the cost of a failed vehicle alignment by Ford, the loss of use of

his vehicle, and the cost to purchase and have installed by Ford an aftermarket part

to remediate the defect during the applicable warranty period.

**COUNT IV**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**("FDUTPA")**
**Fla. Stat. §§ 501.201, *et seq.***

77.     Plaintiff, individually and on behalf of the putative class, hereby

incorporates every allegation above as though fully set forth below.

78.     Plaintiff and the putative class members who purchased or leased

Cutaways are "consumers" under FDUTPA.

79.     Ford's practices, acts, policies, and course of conduct violated

FDUTPA's prohibition on unfair and deceptive conduct in that:

> a.  Ford offered a warranty covering the Cutaway's suspension and
> wheel alignment that it knew it would not honor after the Cutaway was
> modified from an incomplete vehicle to a completed vehicle (i.e.,
> recreational vehicle, box truck, ambulance, etc.).

> b.  Ford knew that the Cutaways could not carry their stated GVWR
> without adjustments, modifications and/or aftermarket parts not
> covered by warranty;

> c.  Ford knowingly denied warranty claims based on suspension and
> vehicle alignment concerns when it knowingly built the Cutaways to
> not allow for any adjustment to castor and/or camber to accommodate
> the vehicle's GVWR.

> d.  Ford forced Plaintiff and the putative class members to expend
> money at its dealerships and other third-party suspension and alignment
> repair shops to diagnose and repair the Cutaways, despite the
> representations about GVWR and the warranty covering suspension
> and alignment.

80.    Ford's acts and omissions are deceptive in that it sold vehicles it knew would not operate safely at the GVWR without considerable adjustment and/or the installation of aftermarket parts.

81.    Plaintiff and the putative class were deceived by Ford's failure to disclose that adjustments and/or installation of aftermarket parts would be necessary to make the vehicle safe to operation.  Plaintiff and the Class suffered out-of-pocket losses in the amounts they paid to remediate the defective condition of the Cutaway.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a)    For an order certifying the proposed class and appointing Plaintiff and Plaintiff's counsel to represent the class;

b)    For an order awarding Plaintiff and the class compensatory, actual, statutory, consequential and/or any other form of damages provided by and pursuant to the causes of action cited above;

c)    For an order awarding, Plaintiff and the class declaratory relief provided by and pursuant to the statutes cited above, including a declaration that Ford's warranty exclusions are unconscionable and enjoining Ford from denying warranty coverage based on the Cutaway being modified after it leaves Ford's control;

d)      For an order awarding Plaintiff and the class pre-judgment and post-judgment interest;

e)      For an order awarding Plaintiff and the class reasonable attorneys' fees and costs of suit, including expert witness fees; and

f)      For an order awarding such other and further relief as this Court may deem just and proper.

## VIII.    DEMAND FOR JURY TRIAL

The Plaintiff and putative class hereby demand trial by a jury of all issues triable by right.

DATED: July 8, 2022              BY: */s/ E. Powell Miller*
                                 E. Powell Miller (P39487)
                                 Sharon S. Almonrode (P33938)
                                 Dennis A. Lienhardt (P81118)
                                 William Kalas (P82113)
                                 **THE MILLER LAW FIRM, P.C**.
                                 950 West University Drive, Suite 300
                                 Rochester, MI  48307
                                 Telephone: (248) 841-2200
                                 Facsimile: (248) 652-2852
                                 epm@millerlawpc.com
                                 ssa@millerlawpc.com
                                 dal@millerlawpc.com
                                 wk@millerlawpc.com

                                 Simon B. Paris
                                 Patrick Howard
                                 **SALTZ, MONGELUZZI, &**
                                 **BENDESKY, P.C**.
                                 1650 Market Street, 52nd Floor
                                 Philadelphia, PA 19103
                                 Telephone: (215) 496-8282

Fax: (215) 496-0999
sparis@smbb.com
phoward@smbb.com

Daniel E. Gustafson
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 S. Sixth St., Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com