UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH L. BOYLE,

       Plaintiff,

                                         Case No. 22-11545

v.

                                         Hon. George Caram Steeh

FORD MOTOR CO.,

       Defendant.
_____/

OPINION AND ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS (ECF NO. 18) AND DENYING
MOTION TO STAY DISCOVERY (ECF NO. 19) AS MOOT

      Defendant Ford Motor Company seeks dismissal of Plaintiff's complaint and to stay discovery. Because Plaintiff has failed to plausibly allege his breach of warranty or consumer protection claims, the court will grant Defendant's motion for judgment on the pleadings.

BACKGROUND FACTS

      Plaintiff Kenneth Boyle brought this putative class action against Ford Motor Company, which manufactures E-Series Cutaways. The Cutaways are "incomplete vehicles" that can be finished as recreational vehicles, box trucks, or ambulances, among other uses. An "incomplete vehicle" is statutorily defined as "[a]n assemblage consisting, at a minimum, of chassis (including the frame) structure, power train, steering system, suspension

system, and braking system, . . . but requires further manufacturing operations to become a completed vehicle." 49 C.F.R. § 567.3. With respect to the Cutaways, Ford is an "incomplete vehicle manufacturer" and is subject to certain statutory requirements. *See* 49 C.F.R. § 568.4. For example, Ford must state the "gross vehicle weight rating," which is the heaviest weight the incomplete vehicle can safely carry once completed. *See* 49 C.F.R. §§ 571.3(b), 568.4(4). The final stage manufacturer "shall complete the vehicle in such a manner that it conforms to the applicable standards." 49 C.F.R. § 568.6.

Plaintiff, a Florida resident, purchased a recreational vehicle from General RV in Dover, Florida. The RV is a 2021 Ford E-Series Cutaway that was fitted as a recreational vehicle by Thor RV. Almost immediately, Plaintiff noticed that the RV pulled to the left when driving. General RV told Plaintiff that it did not "address alignment issues" and referred Plaintiff to Bill Currie Ford. The dealer performed an alignment, for which Plaintiff paid $169.

The RV continued to pull left, so Plaintiff returned to Bill Currie Ford for a second alignment, which was performed free of charge. After the second alignment did not cure the problem, Plaintiff contacted Thor RV, which referred him to Ford because "Ford holds the warranty on the

chassis" and "it could be more than just an alignment as you stated the vehicle continues to pull after you had it aligned." ECF No. 1 at ¶ 17.

Subsequently, because of the continued pulling, Plaintiff took the RV to a second Ford dealer, Gator Ford. He was informed that additional aftermarket parts were required to fix the alignment, specifically adjustable bushings. *Id.* at ¶¶ 18, 40. The cost of labor and parts to remedy the problem was $855.43.

Thor RV declined to pay for the alignment, stating that "Ford should be the one to cover this" and [a]ny caster and camber adjustment can only be made via installing parts that are not from the factory." ECF No. 1 at ¶ 20. Thor RV's warranty excludes coverage for defects associated with the chassis, including "steering, ride and handling." *Id.* at n.8.

Ford provides a warranty that covers all of its vehicles, including Cutaways. ECF No. 1 at ¶ 45. "The New Vehicle Limited Warranty does not cover: (1) parts and labor needed to maintain the vehicle; and (2) the replacement of parts due to normal wear and tear." ECF No. 18-2 at PageID 301. The warranty contains an exception for alignments, which Plaintiff contends should apply here: "Wheel alignments and tire balancing will be provided during the first 12 months or 12,000 miles in service, whichever occurs first." *Id.* Ford asserts, however, that the following

exclusion applies: "The New Vehicle Limited Warranty does not cover any damage caused by alterations or modifications of the vehicle, including the body, chassis, electronics or their components, after the vehicle leaves the control of Ford Motor Company." *Id.* at PageID 299. Ford denied Plaintiff's warranty claim based upon this exclusion. ECF No. 1 at ¶ 63.

Plaintiff contends that Ford's warranty is illusory, in that "Ford knowingly sells its incomplete vehicles to be altered and modified, and then uses an exclusion that denies warranty coverage if a vehicle is altered or modified." ECF No. 24 at PageID 397-98. Plaintiff further asserts that the Cutaways cannot carry their advertised gross vehicle weight without the installation of aftermarket parts to allow for proper wheel alignment. Plaintiff's complaint alleges violations of the Magnuson-Moss Warranty Act and Florida Deceptive and Unfair Trade Practices Act as well as claims for breach of express and implied warranty.

## LAW AND ANALYSIS

### I.  Standard of Review

Ford seeks judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The court reviews a motion brought pursuant to Rule 12(c) under the same standard as a motion brought pursuant to Rule 12(b)(6). *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). The plaintiff

-4-

must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted).

"Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a motion to dismiss, the court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are

central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

II. <u>Warranty Claims</u>

Plaintiff alleges that Ford breached its express and implied warranties and violated the Magnuson-Moss Warranty Act ("MMWA").[1] The MMWA provides a federal cause of action to "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310. The Act incorporates state substantive law for breach of warranty; "[t]herefore, the elements that a plaintiff must establish to pursue a cause of action for breach of warranty under the MMWA are the same as those required by [state] law." *Kuns v. Ford Motor Co.*, 543 Fed. Appx. 572, 575 (6th Cir. 2013). In other words, MMWA claims "'stand or fall' with valid state law warranty claims." *Chapman v. Gen. Motors LLC*, 531 F. Supp.3d 1257, 1285 (E.D. Mich. 2021).

The parties agree that Plaintiff's warranty claims are governed by Florida law. *See McKee v. Gen. Motors LLC*, 376 F. Supp. 3d 751, 756 (E.D. Mich. 2019) (finding a "rational reason . . . exists to displace

---

[1] Plaintiff has conceded the dismissal of his implied warranty claim.

Michigan law" in class action brought by Florida resident who purchased vehicle in Florida). Under Florida law, "there can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms." *Ocana v. Ford Motor Co.*, 992 So.2d 319, 324 (Fla. Dist. Ct. App. 2008). A warranty, like any contract, is enforced according to its terms "when those terms are unambiguous." *McKee*, 376 F. Supp.3d at 757 n.4 (citation omitted). A court applying Florida law construes a contract in "a manner that accords with reason and probability and avoid[s] an absurd construction." *Id.*

Plaintiff alleges that the written warranty covers wheel alignments and that Ford failed to comply with this term. Ford argues that the warranty does not cover "*any* damage caused by alterations or modifications of the vehicle, including the body, chassis, electronics or their components, after the vehicle leaves the control of Ford Motor Company." Plaintiff does not allege that the Cutaway was misaligned once it left the Ford factory, but that it became misaligned because of the modifications done by the final manufacturer, Thor RV. *See* ECF No. 1 at ¶ 5 ("[A]fter a consumer . . . purchases a Ford Cutaway *that has been built out*, the vehicle will not track the road and safe steering is extremely difficult as the vehicle will pull to

-7-

one side of the road due to its weight."), ¶ 35, ¶ 39. The Ford warranty clearly excludes "any" damage caused by modifications and precludes Plaintiff's express warranty claim. Although Plaintiff suggests that the exclusion should not apply to Ford's promise to provide wheel alignments, he does not point to language in the warranty that supports this interpretation.

Plaintiff also argues that the exclusion renders the warranty illusory with respect to Cutaways, because it excludes modifications and these incomplete vehicles are intended to be modified. *See, e.g., Rosenberg v. Lawrence*, 541 So. 2d 1204, 1206 (Fla. Dist. Ct. App. 1988) ("An illusory promise is no promise at all as that term has been . . . defined. If the expression appears to have the form of a promise, this appearance is 'an illusion.'") (quoting 1 *Corbin on Contracts* § 16 (1963)). However, the warranty does not exclude coverage for *all* problems that occur after the vehicle is modified, but only "damage *caused by* alterations or modifications." Because there are circumstances under which the warranty would provide coverage, it is not illusory.

Plaintiff has not adequately alleged a breach of express warranty, because the plain terms of the warranty preclude his claim. Additionally, Plaintiff has failed to allege privity of contract with Ford, which is generally

-8-

required for warranty claims brought under Florida law. "The law of Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant." *T.W.M. v. American Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995); *Douse v. Boston Sci. Corp.*, 314 F. Supp. 3d 1251, 1261-62 (M.D. Fla. 2018) (privity requirement satisfied by "substantial direct contacts" between buyer and manufacturer). In general, "[n]o privity exists, and a breach of warranty claim fails, where plaintiff did not purchase the product from the defendant." *Kaiser v. Depuy Spine, Inc.*, 944 F. Supp. 2d 1187, 1193 (M.D. Fla. 2013). Plaintiff did not purchase his RV from Ford or a Ford dealer, but from General RV, and has not alleged that the privity requirement is satisfied. Nor has Plaintiff responded to Ford's argument that privity is lacking.[2] Accordingly, dismissal of all of Plaintiff's warranty claims – express, implied, and Magnuson-Moss – is appropriate.

### III. Florida Deceptive and Unfair Trade Practices Act

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") bans "unfair or deceptive acts or practices in the conduct of any trade or

---

[2] Although Plaintiff does not contest dismissal of his implied warranty claim, he did not respond to Ford's argument that *both* the implied and express warranty claims should be dismissed for lack of privity. *See* ECF No. 18 at PageID 267; *Straub v. Ford Motor Co.*, No. CV 21-10634, 2021 WL 5085830, at *11 (E.D. Mich. Nov. 2, 2021) (failure to respond to argument that lack of privity precludes express warranty claim under Florida law serves as waiver).

commerce." Fla. Stat. § 501.204(1). A FDUTPA claim has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp.3d 1262, 1280 (S.D. Fla. 2021) (citation omitted). A "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003). "This standard requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007). "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* (cleaned up); *see also Carriuolo v. Gen. Motors LLC*, 72 F. Supp. 3d 1323, 1325-26 (S.D. Fla. 2014) (plaintiff pleaded FDUTPA claim when manufacturer "conspicuously advertised that its car received safety ratings that in fact it did not").

Plaintiff alleges that Ford violated the FDUTPA in two ways. First, similar to his express warranty argument, he argues that it is unfair or deceptive for Ford to provide a warranty for Cutaways, which are intended to be modified, yet exclude coverage for problems caused by modifications.

-10-

As discussed above, this exclusion is neither ambiguous nor illusory. Ford's reliance on the clear language of the warranty cannot plausibly be alleged to be unfair or deceptive to a reasonable consumer. *See Zlotnick v. Premier Sales Grp., Inc.*, 431 F. Supp.2d 1290, 1295 (S.D. Fla. 2006), *aff'd*, 480 F.3d 1281 (11th Cir. 2007) ("At least one Florida court has recognized that a plaintiff has no FDUTPA claim where he signed a contract whose terms expressly contradict any misrepresentations on which he relied.").

Plaintiff alleges that Ford also violated the FDUTPA by failing to disclose that aftermarket parts may be required for the vehicle to safely carry its gross vehicle weight rating ("GVWR") or to adjust the caster/camber. *See* ECF No. 1 at ¶¶ 79-81. But incomplete vehicles such as Cutaways inherently require aftermarket parts to become complete vehicles. *See id.* at ¶ 24; 49 C.F.R. § 567.3 (incomplete vehicle "requires further manufacturing operations to become a completed vehicle"). Given the incomplete nature of the product, the fact that aftermarket parts may be required to adjust the alignment of a completed vehicle is not unfair or objectively deceptive to the reasonable consumer. Further, there is no allegation that Ford would anticipate that the final stage manufacturer would fail to ensure that the vehicle it modified and completed was properly aligned, leaving this basic task to the consumer.

In the context of Ford's sale of incomplete vehicles, Plaintiff has failed to plausibly allege that the warranty exclusion or the need for aftermarket parts constitute objectively deceptive or unfair practices. *See Kurimski v. Shell Oil Co.*, 2022 WL 2913742, at *7 (S.D. Fla. June 30, 2022) (dismissing FDUTPA claim on pleadings because "Plaintiff's claim of deception is premised on her own 'unreasonable assumptions,' which is not sufficient to show 'probable, not possible, deception' of 'consumers acting reasonably in the circumstances'"). Accordingly, dismissal of the FDUTPA claim is appropriate.

ORDER

IT IS HEREBY ORDERED that Defendant's motion to dismiss (ECF No. 18) is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion to stay discovery (ECF No. 19) is DENIED AS MOOT.

Dated: April 27, 2023

s/George Caram Steeh
HON. GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on April 27, 2023, by electronic and/or ordinary mail.

s/Michael Lang
Deputy Clerk